## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JOHN MCALLISTER,                                                    PLAINTIFF
ADC #179342

v.                                    4:22CV01047-DPM-JTK

DEOSHA WHITE, et al.                                               DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr.   Any party may file written objections to all or part of this Recommendation.   If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.   By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

I.    **Introduction**

John McAllister ("Plaintiff") is currently incarcerated at the Randall Williams Correctional Unit of the Arkansas Division of Correction.   His claims in this case arise from the time he was in custody at the Pulaski County Detention Center ("Detention Center").   Plaintiff[1] sued Deosha White, Nawaski Conners, Virmesa Jackson, Asia Callaway, Dena Dennis, Dennis Parker, Ignacio

---

[1] A second inmate is listed as a Plaintiff and signed the Complaint. (Doc. No. 2 at 9; Doc. No. 3 at 9).   The Court opened a separate action for each Plaintiff.   The related case is DeWeese v. White, 4:22-cv-01048-DPM-JTK.

Madrigal, Kyra Jones, and Tenesha Clark[2] (collectively, "Defendants") in their official and personal capacities pursuant to 42 U.S.C. § 1983.   (Doc. Nos. 6, 7).   Plaintiff alleges unlawful conditions of confinement.   (Id.).

Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's case, Brief in Support, and Statement of Facts. (Doc. Nos. 49-51).   On November 17, 2023, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by Monday, December 18, 2023.   (Doc. No. 52).   The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute.   (Id.)   To date, Plaintiff has not filed a response.

After careful consideration of the record before me, and for the reasons set out below, the Court recommends that Defendants' Motion be granted.

## II.    Plaintiff's Claims

Plaintiff filed suit on October 24, 2022.[3]   (Doc. No. 2 at 10).   Plaintiff sued Defendants in their personal and official capacities.   (Doc. No. 6 at 1-3; Doc. No. 7 at 1-3).   Plaintiff alleged that a staffing shortage at the Detention Center resulted in conditions of confinement that violated his federally protected rights.   (Doc. No. 6 at 5-8; Doc. No. 7 at 5-8).   More specifically, Plaintiff alleged that on the dates in question, he was locked down in his cell and denied access to

---

[2] Plaintiff also sued Hussein, who was dismissed from this case on August 11, 2023 for lack of service.   (Doc. No. 41).

[3] Plaintiff's Complaint in this case was filed on October 24, 2022, when he placed his Complaint in the prison internal mail system.   (Doc. No. 2 at 10); Sulik v. Taney County, 316 F.3d 813, 815 (8th Cir. 2003), rev'd on other grounds, 393 F.3d 765 (8th Cir. 2005).

grievances, a shower, mail, phones, the kiosk, calls to his lawyer, and the law library.   (Doc. No. 7 at 5, 6, 7).   The alleged violations occurred in 2022 on the following dates:

        September: 22, 23, 24, 25, 26, 27, 28, and 29

        October:    1, 16, 17, and 18

(Doc. Nos. 6, 7).[4]

## III.    Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

---

   [4] Plaintiff also alleged violations on the following dates in 2022: September 15, 18, and 19; October 6, 8, and 9; and November 3 and 4.   Plaintiff's claims arising on those dates were dismissed without prejudice for failure to exhaust administrative remedies.   (Doc. Nos. 39, 41).

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.    Discussion

Plaintiff alleged unlawful conditions of confinement.    He indicated that at the time of the events giving rise to this lawsuit, he was in jail awaiting trial on pending criminal charges.    (Doc. No. 7 at 4).    A pretrial detainee's conditions of confinement claim is governed by the standard set out by the United States Supreme Court in Bell v. Wolfish. 441 U.S. 520 (1979); Stearns v. Inmate Services Corp., 957 F.3d 902, 907 (8th Cir. 2020).    As announced in Bell, pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment from conditions of confinement that amount to punishment.    441 U.S. at 535.    Conditions amount to punishment under Bell if the conditions are intentionally punitive, were not reasonably related to a legitimate governmental purpose, or were excessive in relation to that purpose.    Stearns, 957 F.3d at 907. Mere negligence is insufficient to support a claim under Bell.    Id. at 908 n.5.

### A.    Facts Not In Dispute

As an initial matter, the Court notes that Plaintiff has not filed a response to Defendants' Motion.    Defendants submitted various Detention Center documents in support of their Motion. Plaintiff has not contested the authenticity or accuracy of these documents. And he has not controverted any material fact set forth by Defendants in their statement of undisputed material

facts.   Accordingly, all material facts submitted by Defendants (Doc. No. 51) are deemed admitted.   Local Rule 56.1(c); FED. R. CIV. P. 56(e).

The material undisputed facts are as followed.   On September 14, 2022, Plaintiff was moved into the lower bunk of Cell Q-315L, which measured approximately 14.5 feet by 9 feet, where he remained until November 27, 2022.   (Doc. No. 51 at ¶¶ 6, 90, 91).

Regarding the dates on which Plaintiff alleges unlawful conditions, the undisputed facts reveal the following:

September 22, 2022

On September 22, 2022, during A-Rotation Shift, 18 employees covered 25 total duty posts, including five employees assisting from other shifts.   (Id. at ¶ 9).   During B-Rotation shift, 21 employees covered 27 duty posts, including two employees assisting from other shifts.   (Id.).

Defendant Clark conducted mail call at 9:00 a.m.   (Id. at ¶ 10).   At approximately 11:12 a.m., Plaintiff placed a phone call.   (Id. at ¶ 12).

September 23, 2023

During A-Rotation Shift, 23 employees covered 25 duty posts, including two employees from other shifts.   During B-Rotation Shift, 24 employees covered 27 total duty posts, including three employees from other shifts.   (Id. at ¶ 13).

At approximately 8:10 a.m., Defendant Dennis submitted an Activity Time Log stating "Start Lower Level."   (Doc. No. 51 at ¶ 14).   Some 13 minutes later, Plaintiff accessed the kiosk. (Id. at ¶ 15).   He accessed the kiosk again at approximately 10:16 a.m.   (Id. at ¶ 16).

<u>September 24, 2022</u>

During A-Rotation Shift, 18 employees were covering 26 duty posts, including nine employees assisting from other shifts.  (<u>Id</u>. at ¶ 17).   During B-Rotation Shift, 22 employees were covering 27 total duty posts, including four employees assisting from other shifts.   (<u>Id</u>.).

At approximately 4:27 p.m., Plaintiff placed a phone call.   (<u>Id</u>. at ¶ 19).   Plaintiff placed a second phone call just minutes later.   (Doc. No. 51 at ¶ 20).   And Plaintiff placed a third phone call at approximately 4:51 p.m.   (<u>Id</u>. at ¶ 21).   He also accessed the kiosk at approximately 4:54 p.m.

<u>September 25, 2022</u>

During A-Rotation Shift, 18 employees were covering 26 duty posts, including six employees assisting from other shifts.  (<u>Id</u>. at ¶ 22).   During B-Rotation Shift, 19 employees were covering 29 total duty posts, including four employees assisting from other shifts.   (<u>Id</u>.).

At approximately 4:27 p.m., Plaintiff placed a phone call.   (<u>Id</u>. at ¶ 23).

<u>September 26, 2022</u>

During A-Rotation Shift, 23 employees were covering 26 duty posts, including eight employees assisting from other shifts.  (<u>Id</u>. at ¶ 24).   During B-Rotation Shift, 19 employees were covering 25 total duty posts, including three employees assisting from other shifts.   (Doc. No. 51 at ¶ 24).

At approximately 5:27 p.m., Plaintiff placed a phone call.   (<u>Id</u>. at ¶ 25).

<u>September 27, 2022</u>

During A-Rotation Shift, 23 employees were covering 25 duty posts, including five employees assisting from other shifts.  (<u>Id</u>. at ¶ 26).   During B-Rotation Shift, 21 employees were covering 24 total duty posts, including four employees assisting from other shifts.   (<u>Id</u>.).

At approximately 8:58 a.m., Defendant Callaway conducted mail call; inmates can also access mail on the kiosk because mail is scanned in by a third party and uploaded to each inmate's account on the kiosk.   (Id. at ¶¶ 27, 92).

A Jacketha Lattimore submitted an Activity Time Log stating "Began on the Lower Level." (Id. at ¶ 28).    Plaintiff accessed the kiosk twice—at 10:38 a.m. and 11:36 a.m.  (Doc. No. 51 at ¶¶ 29, 30).    He placed a phone call at 11:55 a.m.   (Id. at ¶ 31).    Plaintiff submitted two indigent items requests, one asking for hygiene materials and one for legal materials.   (Id. at ¶¶ 32, 33).

September 28, 2022

During A-Rotation Shift, 22 employees were covering 25 duty posts, including six employees assisting from other shifts.  (Id. at ¶ 34).    During B-Rotation Shift, 20 employees were covering 26 total duty posts, including one employee assisting from other shifts.  (Id.).

Plaintiff placed multiple phone calls on September 28, 2022.   (Id. at ¶¶ 36-39, 42, 46). And Plaintiff accessed the kiosk multiple times.   (Doc. No. 51 at ¶¶ 40, 43, 44, 45).

September 29, 2022

During A-Rotation Shift, 23 employees were covering 25 duty posts, including three employees assisting from other shifts.   (Id. at ¶ 47).    During B-Rotation Shift, 23 employees were covering 25 total duty posts, including three employees assisting from other shifts.   (Id.).

Defendant Dennis submitted an Activity Time Log stating "Start Lower Level."  (Id. at 48).  Plaintiff accessed the kiosk twice on September 29—at 11:15 a.m. and 12:13 p.m.  (Id. at ¶¶ 49, 50).    Plaintiff made one phone call at approximately 5:52 p.m.   (Id. at ¶ 51).

October 1, 2022

During A-Rotation Shift, 22 employees were covering 26 duty posts, including three employees assisting from other shifts.  (Doc. No. 51 at ¶ 52).    During B-Rotation Shift, 22

employees were covering 26 total duty posts, including six employees assisting from other shifts. (Id.).

A Tommy Stovall submitted an Activity Time Log stating: "Started For Lower Level." (Id. at 53).   Plaintiff accessed the kiosk four times on October 1, 2022.   (Id. at ¶¶ 54-57).

October 16, 2022

During A-Rotation Shift, 19 employees were covering 25 duty posts, including four employees assisting from other shifts.   (Id. at ¶ 64).   During B-Rotation Shift, 19 employees were covering 27 total duty posts, including two employees assisting from other shifts.   (Id.).

A Code red occurred twice in Q-Unit on that day.   (Doc. No. 51 at ¶¶ 65, 66).

October 17, 2022

During A-Rotation Shift, 20 employees were covering 25 duty posts, including four employees assisting from other shifts.   (Id. at ¶ 67).   During B-Rotation Shift, 17 employees were covering 26 total duty posts, including two employees assisting from other shifts.   (Id.).

Plaintiff made four phone calls on October 17, 2022.   (Id. at ¶¶ 68-71).

October 18, 2022

During A-Rotation Shift, 20 employees were covering 25 duty posts, including four employees assisting five other shifts.   (Id. at ¶ 72).   During B-Rotation Shift, 17 employees were covering 27 total duty posts, including two employees assisting from other shifts.   (Id.).

Plaintiff submitted an indigent items request asking for hygiene and legal materials.   (Doc. No. 51 at ¶ 75).

It is undisputed that the Detention Center was facing staffing shortages at the time of the events giving rise to this lawsuit.   (Id. at ¶ 94).   As a result, inmate movement and recreation time was limited.   (Id.).   The limitations were necessary to maintain safety and security at the

Detention Center, and not to punish inmates.  (Id.).  To combat the staffing shortages, the Detention Center was "actively recruiting new employees and offering sign-on bonuses and increased pay."  (Doc. No. 51-1 at ¶ 8).

**B.    Analysis**

As mentioned above, it is undisputed that the Detention Center was suffering from staffing shortages during the time Plaintiff alleged unlawful conditions of confinement.  It is also undisputed that the Detention Center was making efforts to find new employees, namely recruiting along with offering sign-on bonuses and higher wages.

**1.    No out of cell time, shower, mail, kiosk or telephone calls**

Plaintiff alleges violations on September 22-29 and October 1, and 16-18, 2022.  He says that on those days he was denied out-of-cell recreation, mail, the kiosk, and use of the telephone. The records provided by Defendants, however, establish that Plaintiff did receive time out of his cell on each of those days.  Defendants even provided photographs showing Plaintiff out of his cell along with the kiosk log.  (Doc. No. 51-4 at 3-8).  During Plaintiff's his out-of-cell time Plaintiff used the phone or kiosk on each of the days he alleged he was not allowed to, with the exception of October 16.  Because Plaintiff could access the kiosk, he could also access his mail and submit grievances.  Further, because Plaintiff had access to the telephone, Plaintiff could call his attorney.  And Plaintiff could have showered during his out-of-cell time, as well. Based on the undisputed facts, no reasonable jury could find Plaintiff was denied out of jail time, access to his mail, to the kiosk, to the telephone, and to the shower on the dates in question.

Plaintiff's claims are limited to 8 consecutive days in September, one single day in October, and three consecutive days later in October, 2022.  Even if Plaintiff was subjected to the conditions he alleged, he has not come forth with evidence showing the deprivation was intended

to punish him, was not reasonably related to a legitimate governmental purpose, or that the deprivation was excessive in relation to that purpose. Additionally, other courts considering similar allegations of "relatively short, sporadic deprivations" have found that the alleged violations do not rise to the level of punishment. Mayfield v. Raymond, No. 3:20-CV-03007, 2020 WL 7714715, at *2 (W.D. Ark. Dec. 29, 2020).

### 2.    Access to the Courts

To the extent Plaintiff's claims that he was denied access to the library and calls to his attorney (Doc. No. 6 at 8) state a stand-alone access to the courts claim, that claim fails because he did establish actual injury based on a deprivation on the dates in question. Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).

### 3.    Summary Judgment in Defendants' Favor is Appropriate

Plaintiff failed, despite the advice of the Court, to respond to Defendants' Motion for Summary Judgment. As a result the Court deemed admitted all material facts submitted by Defendants. The Court reviewed the documents underlying Defendants' Statement of Fact and finds them consistent with Defendants' Statement.

Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). As the record currently stands, no reasonable jury could find that a violation occurred. Accordingly, the Court recommends Defendants' Motion for Summary Judgment be granted and Plaintiff's claims against Defendants

White, Connors, Jackson, Callaway, Dennis, Parker, Madrigal, Jones, and Clark be dismissed with prejudice.

**V.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 49) be GRANTED.

2.    Plaintiff's claims against Defendants White, Connors, Jackson, Callaway, Dennis, Parker, Madrigal, Jones, and Clark be dismissed with prejudice.[5]

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 20th day of December, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff's claims against Defendant Hussein were dismissed without prejudice on August 11, 2023.   (Doc. No. 41).